## TORRENT ARMS LUMBER COMPANY *v.* RODGERS.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

Argued November 25, 1884.—Decided December 22, 1884.

A reissue of a patent, applied for with unreasonable delay, and for the purpose of enlarging the specification and claims, in order to include within the monopoly an invention patented after the original patent was granted, is void as to the new claims.

This was an action at law brought June 25, 1879, by Alexander Rodgers, the defendant in error, against The Torrent and Arms Lumber Company, the plaintiff in error, to recover damages for the infringement of reissued letters patent for "a new and improved machine for rolling saw-logs," dated July 15, 1873, granted to Rodgers as the assignee of Esau Tarrant, the original patentee. The lumber company pleaded the general issue, with notice that, among other things, it would give in evidence, and insist in its defence, "that the said patentee and his assignee, the plaintiff, unjustly obtained the reissued .patent for matters and principles embraced in such reissue not included in the original patent or specification therefor, and for what was in fact invented by another, to wit, John Torrent, of the city of Muskegon, who was using reasonable diligence in adapting and perfecting the same;" that John Torrent "made his application for a patent therefor on January 29, 1873, and his patent was granted August 12, 1873, and the plaintiff and his assignee had knowledge prior to the application for such reissue of the aforesaid application for patent by the said John

Torrent, and the said principles so patented by the said John Torrent had (by him) been used at the city of Muskegon, aforesaid, by said John Torrent and others."

Upon the trial in the Circuit Court, Rodgers, to maintain the issue on his part, introduced in evidence the original letters patent, dated August 25, 1868, granted to Esau Tarrant for " a

*Fig. 1.*

new and improved machine for rolling saw-logs," the assignment of said letters patent by the patentee to Rodgers, and the reissued letters patent granted to Rodgers as the assignee of Torrent, applied for June 25, 1873, and issued and dated July 15, 1873.

The specification and claims of the original and reissued patents were both illustrated by the annexed drawings.

The original specification is here reproduced, so as to show the changes made in the reissue. The parts in italics are found in the reissue and not in the original, and the parts enclosed in brackets are found in the original and not in the reissue:

"Be it known that I, Esau Tarrant, of Muskegon, in the county of Muskegon and State of Michigan, have invented a

Fig. 2.

new and improved machine for *turning* [rolling saw] logs; and I do hereby declare that the following is a full, clear and exact description thereof, which will enable others skilled in the art *to which it appertains* to make and use the same; reference being had to the accompanying drawings forming [a] part of this specification:

"Figure 1 is a side view of my improved machine, parts of the frame being broken away to show the construction.

"Figure 2 is a detail sectional view of the same taken through the line *x, x, of* Figure 1.

"Similar letters of reference indicate corresponding parts *in the different figures of the draw   g.*

"My invention has for its o     ct to furnish an improved device for turning or rolling logs *to or* upon the carriage of circular or other saw-mills, which shall be simple in construction, effective in operation, and conveniently operated ; and it consists in *the application for that purpose of a toothed-bar connected with means for giving it the necessary movement ; and further, in* the construction and combination of the various parts, as hereinafter more fully described.

"A represents [a part of] the frame work, and B [represents] the log carriage of *a* [an ordinary] saw-mill [about the construction of which parts there is nothing new].

"C is *a* [an upright] bar having teeth $c^1$ attached to its forward side, and which [moves up and down between the posts D, attached to the frame A], *has a vertical as well as horizontal movement, controlled by suitable guides.*

"The lower end of the toothed arm C is pivoted to and between two blocks E, which moves up and down in grooves in the inner sides of the posts D, as shown in Figure 2, and in dotted lines in Figure 1.

"This construction enables the upper end of the [upright] bar C to move back and forth to adjust itself to the size of the log to be rolled or turned upon the carriage B, and also to enable the teeth $c^1$ to pass the log when the bar is descending.

"To the rear side of the lower end of the bar C is attached, or upon it is formed, a block, arm, or projection $c^3$, to which is attached the end of the rope or chain F, by means of which the said [upright] bar C is raised to turn the log.

"This manner of attaching the hoisting chain forces the upper end of the said bar C forward, causing the teeth $c^1$ to take a *firm* [firmer] hold upon the log to be rolled.

"The chain or rope F passes over a pulley G, secured in *a* proper position [immediately] beneath a log deck H, and

thence down to the barrel or drum I *upon* [of] the shaft J, to which *one* [its] end *of it* is securely attached.

" *Upon* [To] the shaft J is *also* attached the large friction pulley K, to which motion is given by the small friction pulley L, *secured upon* [attached to] the shaft M, to which shaft is also attached the pulley N, by means of which motion is communicated to the apparatus from the driving power of the mill.

" One end of the shaft M works in stationary bearings attached to or connected with the frame of the mill, and its other end works in bearings *secured upon* [attached to] the bridge-tree O, one end of which is pivoted to the frame A, and the other [end of which] rests upon the cam P, of the cam-shaft Q, so that by means of said cam-shaft the bridge-tree O may be raised or lowered to bring the friction-pulley L into or remove it from contact with the friction-pulley K.

" R is a brake-bar which may be made of wood or other suitable material. One end of *this* [the] brake-bar [R] is pivoted to the frame A or [to] some other suitable support, and its other end is connected with *one* [the] end of the bridge-tree O by the bar S, so that as the friction-pulley L is moved away from the [friction] pulley K the brake may be applied to the friction-pulley K, either to hold the bar C stationary or to allow it to descend with any desired rapidity.

" To one end of the cam-shaft Q is attached a lever or arm T, having a weight U suspended from its end, which may be regulated so as to hold the friction-pulley L against the [friction] pulley K with any desired force.

" The lever or arm T may be operated to throw the friction-pulley L into or out of gear with the friction-pulley K, by means of levers or cords, as may be desired or *found most* convenient.

" Having thus described my invention, [what] I claim as new and desire to secure by letters patent [is]—

" *1. The toothed-bar herein described operating substantially in the manner and for the purpose specified.*

" [1] *2.* The toothed-bar C, pivoted at its lower end between the blocks E, which are adapted to slide in vertical grooves formed in the posts D, whereby the said bar C is rendered ver-

tically movable and capable of adjustment to suit logs of different sizes, substantially as herein set forth [and shown].

"*3.* The *combination* [arrangement] of the pivoted brake R, connection S, and pivoted bridge-tree O, [in which is formed the outer bearing for shaft *m*], substantially as herein shown and described, [whereby pulley L is removed from contact with pulley K, and the brake brought into contact with the latter and vice versa simultaneously, as herein set forth.]

" [2] *4.* The combination with [and arrangement with relation to] the bar C, of the cord or chain F, pulley G, shaft J, drum I, friction-pulleys K L, and adjustable shaft M, [all] *substantially* as set forth [and shown].

" [4] *5.* The *combination* [arrangement] of the cam *P* and shaft [P] Q and weighted arm T, with [relation to] the connected brake and bridge-tree, to operate as and for the purpose described."

It appeared by the bill of exceptions that the only claim of the reissued patent upon which the plaintiff relied, or which was considered under the instructions of the court to the jury, was the first claim. The plaintiff relied simply upon the infringement of the toothed-bar and its mode of operation. He did not allege infringement of any combination claim, or of the device, or any of its parts, by which the movement of the toothed-bar was produced.

The plaintiff also introduced evidence tending to show, as he claimed, infringement by the defendant of the first claim of the reissued patent, and evidence tending to show the damages sustained by him by reason of such infringement.

The defendant, to sustain his defences, introduced in evidence letters patent " for certain improvements in log-turners" issued to John Torrent, dated August 12, 1873, upon his application therefor filed January 29, 1873. In this patent a wedge-shaped toothed-bar is shown hinged at its lower end to an upright shaft, in order that it might adjust itself in proper position to take hold of a log and roll it to and on the carriage of a saw-mill. The apparatus was shown in combination with inclined ways upon the log-deck, provided with a stop to hold back the logs which lay side by side in a series on the log-deck, and it was intended

that the log-turning device should separate the last log in the series from the others, and roll it over from the deck upon the carriage. The first claim of the patent was "the toothed-bar, the bottom of which is pivoted to an upright reciprocating shaft, as described." The specification of the patent was illustrated by the annexed drawing.

*Fig. 1.*

The defendant then introduced evidence tending to show that the machine, the use of which by him was charged by the plaintiff to be an infringement on his reissued letters patent, was constructed according to the patent of John Torrent just described.

The evidence having been closed, the defendant asked the court to charge the jury—

"That in view of the pleadings and proof, and the claims and disclaimers of the plaintiff regarding the portion of his patent claimed to be infringed, the jury are instructed to render a verdict for the defendant."

The court refused to give this charge. After receiving the charge of the court upon the case, as presented by the pleadings and evidence, the jury returned a verdict for the plaintiff for $960, on which the court rendered judgment. This writ of error brought up that judgment for review.

*Mr. B. F. Thurston* and *Mr. George W. Dyer* for plaintiff in error.

*Mr. C. C. Chamberlain* and *Mr. R. A. Parker* for defendan in error.

MR. JUSTICE WOODS delivered the opinion of the court. He recited the facts as above stated, and continued:

The refusal of the court to direct the jury to return a verdict for the defendant is, among other things, assigned for error. We think the charge requested should have been given, because, in our opinion, the first claim of the reissued patent, which is the only one that the plaintiff insisted had been infringed, is void.

The testimony showed that it was the practice in saw-mills to "slab" the logs after they were placed on the carriage, that is, to saw off slabs on two or four sides of the log. To accomplish this it was necessary that the log should be turned on the carriage. An inspection of the drawings and specification of Esau Tarrant's original patent shows that his device was for the turning of logs upon their axes when placed upon the carriage of a saw-mill, so that the opposite parts of the log might be successively presented to the saw and slabs cut therefrom. It was no part of the purpose of the contrivance to roll the log from one place to another, as from one part of the log-deck to another, or from the log-deck to the carriage. On the contrary, the drawing shows that the device was so made as to prevent the rolling of the log from one place to another. This was accomplished by knees considerably higher than the diameter of the log, against which the log was pressed, and which held it in position and formed part of the means by which the log was made to revolve on its axis. When placed in contact with the knees, the log was in the right position to be subjected

to the action of the saw. It is not possible with this device to roll the log from one place to another except by raising it, if that could be done, to the top of the knees and tumbling it over them to the other side; and, if this were done, it would defeat the object of the invention by moving the log off the carriage and away from the saw.

In the reissue the specification is modified so as to make a radical change, not only in the purpose, but in the mechanism of the invention. In the original patent the invention was declared to be an improved device for turning or rolling logs upon the carriage of a saw-mill. In the reissue the invention was declared to be a device for turning or rolling logs *to or* upon the carriage. The device, as described in the reissued patent, is adapted, not only to turn logs on their axes, but to roll them from one place to another, as from one part of the log-deck to another, or from the log-deck to and upon the carriage. This requires a change of mechanism. To turn a log when on the carriage without change of its location requires that the toothed-bar should be placed as closely as possible to the side, or within the side of, the carriage, and there must be knees to prevent a change in the location of the log. To roll a log to the carriage, or to roll a log from the log-deck upon the carriage, the toothed-bar must be at a distance from the carriage at least as great as the diameter of the log, and the slot in which it works must be extended accordingly, and the knees are not only unnecessary, but would be an obstruction to the operation of the device.

The movement of a toothed-bar in turning a log on a carriage against the resistance of the knees is necessarily in the same plane, while the movement of a toothed-bar in rolling a log toward or upon a carriage is necessarily in constantly changing planes, as the bar follows the changing position of the log.

The change of the specification, therefore, includes an omission of the knees, a change in the location of the toothed-bar, a change in its movements, and a change in the effect produced by its movements. The reissue, consequently, covers a different invention from that described in the original patent. It

embraces a different machine, intended for different purposes and performing different functions, from that described in the original patent.

When we turn to the claims of the reissued patent we find a corresponding enlargement of the scope of the patent. The claims of the original patent are substantially reproduced in the reissued patent, except that a combination instead of an arrangement of the different parts was claimed. But a new claim is added, namely, the first, which is as follows: " The toothed-bar herein described operating substantially in the manner and for the purpose described."

· Each of the claims of the original patent was for a combination. But the first claim of the reissue covers the toothed-bar operating substantially in the manner described, without reference to the mechanism by which it was moved, segregated from the combination and claimed as a distinct invention of the patentee.

The operation of the toothed-bar is enlarged in the first claim of the reissue. In the original patent it was used in connection with the knees set upon the log carriage to prevent the log changing its place and to aid in giving the log a rotary motion on its axis. In the first claim of the reissue, construed in connection with the changed specification, the toothed-bar may be used with or without the knees. The knees are used when the toothed-bar is employed for revolving the log on its axis, and they are omitted when the toothed-bar is used for rolling the log over and moving it from one place to another. Both the specification and claims of the reissue are enlarged to include an invention not described or included in the original patent.

The application of John Torrent for his patent dated August 12, 1873, was filed January 29, 1873. The invention covered by his patent was the alleged infringing machine used by the defendant. After the patent of John Torrent had been applied for, and his invention fully described in his application, and nearly five years after the grant of the original letters patent to Esau Torrent, the latter applied for the reissue with its expanded specification and claims. The reissue was clearly intended to forestall John Torrent's invention and include it in

the claims of the reissued patent of Esau Tarrant. We find, therefore, that the specification and first claim of the reissue was an enlargement of the claims of the original patent, and covered an invention not covered or described therein ; that the reissue was not applied for until nearly five years after the date of the original patent, and not until another inventor had made a substantial advance in the art to which the original patent belonged, which the assignee of the original invention, it may be fairly inferred, desired to include in the monopoly of his patent, and that he sought to accomplish this by its reissue. The first claim of the reissued patent was therefore void. This conclusion is sustained by many decisions of this court, some of which may be found in the following cases : *Gill* v. *Wells*, 22 Wall. 1; *Wood Paper Patent*, 23 Wall. 566 ; *Powder Co.* v. *Powder Works*, 98 U. S. 126 ; *Ball* v. *Langles*, 102 U. S. 128 ; *James* v. *Campbell*, 104 U. S. 356 ; *Heald* v. *Rice*, 104 U. S. 737 ; *Miller* v. *Brass Co.*, 104 U. S. 350 ; *Johnson* v. *Railroad Co.*, 105 U. S. 539 ; *Bantz* v. *Frantz*, 105 U. S. 160 ; *Wing* v. *Anthony*, 106 U. S. 142. Especial attention is called to three decisions of this court which are peculiarly apposite : *Clements.* v. *Odorless Excavating Co.*, 109 U. S. 641 ; *McMurray* v. *Mallory*, 111 U. S. 96, and *Mahn* v. *Harwood*, *ante*, 354.

It follows, from the views we have expressed, that the plaintiff below failed to show any cause of action against the defendant. The court should, therefore, have charged the jury, as requested, to return a verdict for the defendant. Its refusal to do so was error, for which

*The judgment is reversed, and the cause remanded to the Circuit Court, with instructions to grant a new trial.*