### TORRANT v. DULUTH LUMBER CO.

*(Circuit Court, D. Minnesota. May, 1887.)*

1. PATENTS FOR INVENTIONS—REISSUE—DISCLAIMER.
    Letters patent were issued August 25, 1868, to Essau Tarrant "for a new and improved machine for rolling saw-logs." On July 15, 1873, a reissue (No. 5,487) was made to Alexander Rodgers, as Tarrant's assignee, which declared the invention to be a new and improved machine for turning logs, and in which it is described in the specification as an invention having for its object "to furnish an improved device for turning and rolling logs *to or upon* the log-carriage of saw-mills." The first claim of the reissue was held by the court to be void for the reason that the specification had been enlarged beyond the original patent, in that the invention there described required the use of knees, and the operation of the tooth-bar had been enlarged in the first claim of the reissue in that a change of the movement and location of the tooth-bar was necessary in order to roll a log to the carriage, and the knees essential to the operation of the invention described in the original would be an obstruction to the operation of the tooth-bar for the purpose of rolling logs to the carriage. A disclaimer was filed as to "that part of the specification which is in the following words, viz.: '*First,* the tooth-bar herein described, operating substantially in the manner and for the purpose specified.'" *Held,* that the disclaimer, being in the terms of the first claim of the reissue, was sufficient to limit the reissue to the second claim therein, and as that claim corresponded to the invention described in the original patent, the reissue so limited was valid.

2. SAME—INFRINGEMENT—MECHANICAL EQUIVALENTS.
    In the Hill machine for rolling logs a radius bar is used which guides the lower end of the tooth-bar, and permits it to adjust itself to the diameter and inequalities of a log, when the power is applied to the rear arm or branch of the tooth-bar. *Held,* that the Tarrant patent being for a primary invention, and it being shown by the evidence that radius bars were in common use as equivalents for cross-heads and guide-posts, when the movement is to be guided in the direction and as described in the Tarrant reissue, (No. 5,487,) the Hill machine is an infringement of the Tarrant patent.

3. SAME—OPERATIVE DEVICE.
    The first claim of letters patent, dated May 18, 1875, issued to John Orm, is in the following terms: "In a log-turning device the spike-bar F., having turning spikes, F', in combination with the piston rod, D'', and piston head, D''', of a steam cylinder, A, constructed and operating substantially as and for the purposes described." *Held,* that as the device is not operative without a pressure roller to hold the tooth-bar in place against the log, the claim does not describe an operative combination, and is void.

In Equity. Bill for infringement of letters patent.
*Parker & Burton, B. F. Thurston,* and *P. H. Gunckel,* for complainant.
*West & Bond,* for defendant.

NELSON, J. This is a suit in equity brought by the complainant against the defendant charging the infringement of two letters patent,— one (reissue No. 5,487) dated July 15, 1873, to Alexander Rodgers as assignee of Essau Tarrant; and the other (granted to John Orm, No. 163,398,) dated May 18, 1875. The complainant owns both patents, and the bill charges the infringement of the second claim in the Tarrant reissue and the first claim of the Orm patent. The answer contains several defenses. It denies infringement, and alleges that the second claim of the Tarrant reissue is void because the reissue has been unlawfully enlarged; and that both the second claim of the Tarrant reissue and the first claim of the Orm patent are void for want of patentability.

Before touching the question of infringement, I will first examine the defense of the invalidity of the patents as charged.

*Tarrant Patent.* Essau Tarrant took out letters patent, August 25, 1868, "for a new and improved machine for rolling saw-logs." As described in the specification, the apparatus rotated a log upon its axis upon the log carriage of a saw-mill, and the knees on the carriage were effective and essential to the operation. As stated by him, his invention had for its object "to furnish an improved device for turning or rolling logs upon the carriage of * * * saw mills, * * * .and it consists in the construction and combination of the various parts, as hereinafter more fully described." The first claim of the patent was for a combination as follows:

"The tooth-bar, C, pivoted at its lower end between the blocks, E, which are adapted to slide in vertical grooves formed in posts, D, whereby the said bar, C, is rendered vertically movable and capable of adjustment to suit logs of different sizes, substantially as herein set forth and shown."

This bar, moving up and down by the side of the log on the carriage, rotated it upon its axis. The lower end of the bar being pivoted to and between blocks which moved in the grooves of upright posts—substantially a cross-head—allowed a horizontal movement—would move back and forth to adjust itself to the log upon the carriage. The power is applied to a projecting arm at the rear side of the lower end of the bar and moves it up and down and presses it forward so that the teeth shall take a firm hold of the log, and the knees against which the log is pressed holds it in place and forms part of the means by which it is rotated.

In the reissue the invention is declared to be a new and improved machine for turning logs, and it is described in the specification as an invention having for its object " to furnish an improved device for turning and rolling logs *to or upon* a log carriage of saw-mills, and it consists in the application for that purpose of a tooth-bar connected with means for giving it the necessary movement, and further in the construction and combination of the various parts, as hereinafter more fully described," and an additional claim was added to-wit: "I claim, *first,* the tooth-bar

herein described, operating substantially in the manner described and for the purpose specified." This first claim of the Tarrant reissue was held by the supreme court of the United States, in *Torrent Arms, etc., Co.* v. *Rodgers*, 112 U. S. 659, 5 Sup. Ct. Rep. 501, to be void, for the reason that the specification had been unlawfully enlarged so as to describe a machine or an invention not' the same as the one for which the original patent issued. After a decision in that case the complainant purchased the Tarrant patent, and filed a disclaimer June 3, 1885, as to the first claim of the reissue. The disclaimer may be found in complainant's evidence, page 169; and, in brief, after setting up his title to the Tarrant reissue, etc., states that he has "reason to believe that through inadvertence and mistake the specification and claim of said letters patent are too broad, including that of which said patentee was not the first inventor. Your petitioner therefore enters his disclaimer to that part of the claim in that specification which is in the following words, to-wit: '*First*, the tooth-bar herein described, operating substantially in the manner and for the purpose specified. [Signed] JOHN TORRENT. Witnesses, PARKER & BURTON.'" In other words the disclaimer amounts to this: "I disclaim a tooth-bar connected with means for turning or rolling logs to the carriage of saw-mills." The disclaimer, I think, is broad enough to carry with it all in the specification which connected with the first claim of the reissue, describes an invention whereby the tooth-bar could be used without the knees as a machine for rolling logs *to* the carriage of a saw-mill. The supreme court decided that the invention described in the original patent required the use of knees, and that the operation of the tooth-bar is enlarged in the first claim of the reissue, in that it required a change of the movement and location of the tooth-bar necessary to roll a log to the carriage, and that the knees essential to the operation of the invention described in the original, to-wit, turning or rolling logs upon the carriage of a saw-mill would be an obstruction to the operation of a tooth-bar for the purpose of rolling logs to the carriage. This disclaimer refers to the *claim in that specification* which enlarged the invention, and a fair construction of it would eliminate any operation and use of a tooth-bar covering a different invention from that described in the original patent. The disclaimer relieves the reissue from the objectionable features pointed out by the supreme court, and describes the same invention as the original.

The second claim in the reissue, therefore, being for a combination of elements, to-wit: "The tooth-bar, C, pivoted at its lower end between the blocks, E, which are adapted to slide in vertical grooves formed in posts, D, whereby the said bar, C, is rendered vertically movable and capable of adjustment to suit logs of different sizes substantially as herein set forth," does not enlarge the scope of the patent, but corresponds with the body of the specification, after effect is given to the disclaimer as I interpret it. The defendant's counsel concedes the right to disclaim, and limit the description in the specification of a patent and also the corresponding claim; and authorities are not wanting for such right. There is, then, described in the reissue an invention which is novel and original and of

great value to the lumber interests of the country. It was the first device of its kind for turning a log upon the carriage of a saw-mill, and was extensively used. There was no machine used previous to Tarrant's patent in 1868 for the purpose of handling the log upon the carriage in the manner described therein, and for that purpose it was practically efficient. The second claim of the reissue, therefore, after the disclaimer, contained a patentable combination, and Tarrant was the first inventor of a machine which accomplished its work effectively, and gave the tooth-bar, through the contrivance described, a vertical and lateral motion which rotated the log upon its axis. Such a combination of elements is entitled to protection as a new and useful invention.

The defendant insists that the second claim in the reissue, as a combination claim, is limited to the peculiar and specific form of the devices mentioned in it, and described in the specification as operating in a particular manner. The doctrine relating to mechanical equivalents, as he states it, is not applicable to this invention. The Tarrant patent, as the pioneer invention, is entitled to a more liberal application of the doctrine of mechanical equivalents; and if the defendant has substantially made use of the patentee's invention, by employing well-known mechanical equivalents to accomplish the same result as the Tarrant combination does, it is an infringer. The defendant uses a machine which has an upright tooth-bar, with two arms or branches; one in front and one in the rear at its lower end, which makes it forked. Two steam-cylinders sitting on trunnions are placed under it, one smaller than the other, and each arm of the tooth-bar is hinged to the outer end of the piston-rods of these cylinders. The front end is pivoted to a radius bar, the other end of which is hinged to the frame of the saw-mill. When the log is upon the carriage to be rotated, steam power is applied to the piston of the larger cylinder, to which the rear arm is attached, and the tooth-bar moves up causing its teeth to take hold of the log; at the same time the piston-rod of the smaller cylinder moves up, and the end of the radius bar pivoted to the front arm of the tooth-bar allows it to adjust itself to the log upon the carriage. The piston-rod, to which the power is applied as it moves the tooth-bar vertically, also presses the log against the knees of the carriage, when the teeth engage it, and by these movements the log is rotated. If it is necessary to press the log more closely to the knees, steam is admitted to the top of the smaller cylinder, which would tend to stop the upward movement of the tooth-bar, and draw, by this piston-rod, the bar more firmly to the log. Other operations are performed in the defendant's machine, but only the movements described are necessary for my purpose. The machine used is called the "Hill machine." It is seen at a glance that if the radius bar used in the Hill machine is equivalent to the cross-heads and posts in the Tarrant machine, and serves the purpose for which Tarrant used them, the defendant's machine, in the operation of turning a log, invades the invention owned by complainant. The radius bar in the Hill machine guides the lower end of the tooth-bar, and permits it to adjust itself to the diameter and inequalities of a log, when the power is applied to the rear arm or branch

to move it vertically. It also holds the cylinders in position, and, if the radius bar is taken away, the tooth-bar and the cylinders will be free to topple over.

It is shown by the evidence that radius bars were in common use as the full equivalent for cross-heads and guide posts, when the movement is to be guided in the direction and as described in the Tarrant reissue. In the Hill machine, then, I find a tooth-bar pivoted at its lower end, and guided so that the bar is rendered vertically movable and capable of adjustment to suit logs of different sizes, and this combination of elements performs the same office as the combination of corresponding elements in the Tarrant invention. So far, then, as this combination exists in the Hill machine, and the practical operation of the elements of the combination to rotate a log upon its axis upon a carriage is the same in both machines, the defendant infringes the complainant's invention. Tarrant was the first in the field, and Hill follows his leading ideas as set forth in his patent.

*Orm Patent.* The defendant insists that the first claim of the Orm patent is void for want of patentable novelty.

This claim is in the following language:

"In a log-turning device, the spike-bar, F, having spikes, F', in combination with the piston-rod, D'', and the piston-head, D''', of a steam-cylinder, A, constructed and operating substantially as and for the purposes described."

In the year 1871 or 1872, John Orm, seeing at Muskegon, Michigan, a Tarrant machine in operation, working, as he thought, too slow, and having previously seen a steam freight-hoisting apparatus on a steamer, which consisted of a platform upon which the freight was placed and hoisted from deck to deck by a steam-cylinder, conceived the idea that the tooth-bar could be operated by steam; and he built what he called a steam-cylinder log-canting machine, which consisted of two cylinders five feet long and eight inches in diameter, with trunnions on each for oscillating, and bolted together with a steam-joint. It formed really but one cylinder, with piston-heads as usual in steam-engines, and with a short piston-rod connecting with it, to which was attached a tooth or spike bar. There was a pressure roller at the back of this spike-bar, to hold the bar up to the log. This machine he afterwards made with a single cylinder, the tooth-bar being attached rigidly to the piston-rod, and used a pressure roller. This was the machine patented. The cylinder, being on trunnions, allowed horizontal motion to the bar, but the resistance of the knees would throw the bar back when it was moved vertically, and the teeth engaged the log. Unless there was a pressure roller to hold it up, the bar would fall back clear of the log, and would not turn it at all. Such is the testimony of defendant's expert, Bates. John Orm saw this, and his patent provides for a pressure roller permanently attached to the frame of the mill, and, to secure its operation to hold the tooth-bar up to the log, he has an oscillating bar nearly upright, pivoted to the frame of the mill, and near its top, and at right angles an arm extends towards the tooth-bar, and at the end of this arm is securely attached a pressure roller, which bears upon the rear of the tooth-bar.

The oscillating bar can be held by a weight, so that the pressure roller shall cause the spikes or teeth to keep their hold during the upward reciprocation of the bar in the operation of turning the log. If there was no pressure roller when the tooth-bar struck the log, and moved horizontally, it would not turn the log, but would fall away as far as the length of the slot, through which the bar passed would allow. The machine, in my opinion, would not operate without the rear pressure roller. John Orm put it there. Robert Orm said: "It has to have it on." The complainant's expert, Dayton, says that it would turn small logs without it; but Bates, the defendant's expert, says it would be inoperative without it, or some device to hold the bar up to the log. I think the counsel for the defendant, by the diagram and model illustrating the movements of the bar, has also shown that it is inoperative without the pressure roller. The first claim in the Orm patent, therefore, in my opinion, does not describe an operative combination, and is void.

The conclusion arrived at is that the complainant is only entitled to a decree, as prayed in his bill, for an infringement of the second claim in the Tarrant reissue, and it is so ordered.