**Julia GARCIÁ, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 3544 (WCC).**

United States District Court, S.D. New York.

March 16, 1984.

Johnson, Tannen, Brecher, Fishman, Feit & Heller, P.C., New York City, for plaintiff; Barbara D. Tilker, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Frederick M. Lawrence, Asst. U.S. Atty., New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Claimant Julia Garcia ("Garcia") brought this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for review of a final determination by the Secretary of Health and Human Services (the "Secretary") denying her claim for a period of disability and disability insurance benefits. The case is currently before the Court on cross-motions for

judgment on the pleadings, Rule 12(c), F.R. Civ.P. Because the Secretary's determination is not supported by substantial evidence, this matter will be remanded to the Secretary for further proceedings in accordance with the directions set forth below.

On June 25, 1980, Garcia filed an application for disability insurance benefits, based upon her lower back problems. *See* tr. at 76. Her application was denied initially on September 17, 1980, *see* tr. at 81, and upon reconsideration on November 6, 1980. *See* tr. at 84. Garcia then requested a hearing, which was originally scheduled for March 5, 1981 but was adjourned to allow her an opportunity to arrange for representation by legal counsel. On May 13, 1981, Administrative Law Judge Ralph A. Celentano (the "ALJ") conducted a hearing on Garcia's claim. In a decision dated October 28, 1981, following a *de novo* review of her claim, the ALJ found that Garcia was not entitled to a period of disability or disability insurance benefits. *See* tr. at 18–21. Garcia appealed that decision, and submitted additional medical evidence for consideration by the Appeals Council. On March 29, 1983, the Appeals Council refused to review the ALJ's decision, making it the final decision of the Secretary.

*Background*

At the hearing before the ALJ, Garcia testified through a translator that she came to the continental United States from Puerto Rico thirteen years ago. *See* tr. at 46. Although she had a high school education in Puerto Rico, she is unable to communicate in English. *See* tr. at 38, 46. She is married and has a twelve-year-old son. *See* tr. at 45–46. From the time Garcia came to the United States until she injured her back in 1976, she worked as a machine operator in a factory that made handbags and wallets. *See* tr. at 47–48. In that capacity, she was required to sit in front of a machine that glued parts of handbags to one another. *See* tr. at 48. Her tasks were repetitive; she would put the materials in place, activate the machine by pressing a button with her hand, and then, after the machine operation was finished, place the partially constructed bag to the side. *See* tr. at 48, 51. After she had accumulated many partially completed pieces—between 88 and 200—she would stand up and carry them to a large communal basket located on the floor of the factory. *See* tr. at 52–54. The piles of bags she had to carry to the basket sometimes weighed as much as 60 pounds. *See* tr. at 53–54. Garcia testified that all the other machine operators similarly accumulated many bags before they placed them in the basket, because it would be impossible to perform the job efficiently if an operator had to run back and forth to the basket after each pass of the machine. *See* tr. at 54.

Garcia testified that she injured her back in September 1976, when she attempted to straighten up after placing a heavy load of bags in the basket. *See* tr. at 52, 55. She attempted to go back to work after her injury, but was able to work for only three months before she had to quit. *See* tr. at 55. She stated that she cannot sit or stand for an extended period of time because she suffers pain in the lower left side of her back, radiating down her left leg. *See* tr. at 54–55. According to Garcia, if she stands for more than 10–15 minutes at a time, or sits for longer than one-half hour, the pain becomes too severe. *See* tr. at 67–68. Although she takes medicine for her pain, she claims it provides only slight relief. *See* tr. at 59. She also stated that she is unable to walk for more than two blocks or to lift or carry anything. *See* tr. at 67–68.

Claimant testified that she spends her average day alone at home while her son goes to school and her husband goes to work. *See* tr. at 59. She rarely goes out of her apartment except to visit the doctor, and when she does go out she is always accompanied by her husband. *See* tr. at 59–60. Her husband does all of the shopping and housework, most of the cooking, and assists her with her personal needs such as washing and dressing. *See* tr. at 59–60, 62–63.

The medical evidence submitted by Garcia to the ALJ and the Appeals Council included a series of reports by Dr. Christopher Michelson, who has been treating Garcia for her back injury since 1977. His reports indicate that on July 31, 1978, Garcia was operated on at the Columbia Presbyterian Hospital for a herniated disc. She made a slow recovery, but was finally discharged on August 20, 1978 with a prescription for Percodan to relieve her pain. *See* tr. at 123. By the beginning of October, Dr. Michelson reported that her pain had diminished somewhat from its pre-operative level, and that she was wearing a corset. *See* tr. at 124. However, in an October 24, 1978 visit, Dr. Michelson observed that Garcia could not sit for more than 15–30 minutes or walk for more than 10–15 minutes without increased pain. *See* tr. at 129. By January 1979, Dr. Michelson observed that Garcia was walking well and had excellent strength in both lower extremities, although she was unable to bend forward or hyper-extend because of pain. *See* tr. at 125.

On May 26, 1979, Garcia was examined by Dr. Max Kliger, a consultant for the State Insurance Fund. Dr. Kliger found that her leg-raising ability and forward and lateral flexion were actively restricted, and concluded that she had a moderate partial disability. *See* tr. at 126. On March 10, 1980, claimant was examined by Dr. S.P. Lehv, another examining consultant for the State Insurance Fund, who concurred in the observations of and course of treatment ordered by Dr. Michelson. *See* tr. at 131–32. Dr. Lehv found that Garcia's lumbar curve was totally obliterated and that her paravertebral musculature was in spasm, demonstrating defensive splinting and paravertebral boarding. *See* tr. at 131. He also observed that she had no mobility in forward flexion. *See id.* On the basis of his examination and his review of the medical record, Dr. Lehv concluded that Garcia had a moderate partial disability. *See* tr. at 132.

In connection with Garcia's application for disability benefits, Dr. Michelson completed a residual functional capacity evaluation form on May 4, 1981, on which he noted that claimant can neither sit, stand, nor walk for more than one hour at any one time. *See* tr. at 139. Dr. Michelson further indicated that although Garcia has full use of her arms and hands and can occasionally lift or carry up to five pounds, she can never lift or carry more than that weight. *See id.* Finally, the doctor noted that Garcia is completely unable to bend or crawl, and can only occasionally squat, reach, or climb up one flight of stairs. *See id.* Also as part of her application for disability benefits, Garcia was examined on August 11, 1980 by Dr. Sidney Elpern, an examining consultant for the Secretary. Although Dr. Elpern indicated that Garcia's muscle volume and cranial nerves were normal, he found that her ability to bend laterally, anteriorly and posteriorly was restricted with the complaint of pain, and that she had diminished sensation along her entire left side. *See* tr. at 137. Dr. Elpern concluded that:

> [Garcia] complains of sciatic syndrome on the left, a laminectomy was done probably for a prolapsed disc, but has resulted in no improvement. She still complains of disabling pain. The only findings present are those due to a super imposed [sic] psychogenic factor.

*See id.*

On February 18, 1982, after the date of the ALJ's decision, Garcia was readmitted to Columbia Presbyterian Hospital for additional surgery on a further herniated disc. *See* tr. at 153. Her medical records, which were considered by the Appeals Council, reflect that on February 19 she underwent a spinal decompression and fusion performed by Dr. Michelson. *See* tr. at 154–157. She developed post-operative complications, and found ambulation very difficult. *See* tr. at 158. Upon her discharge from the hospital on March 27, 1982, she was unable to walk without assistance; therefore she required the services of a home attendant. *See id.* In a report following an examination on May 19, 1982, Dr. Michelson noted that although Garcia's walking was improved, she still required

the services of a home attendant because she was unable to stand for more than five minutes. *See* tr. at 159. In Dr. Michelson's final report, dated October 28, 1982, he stated that Garcia was still experiencing pain, and that "some days are pretty good [while] others are pretty bad." *See* tr. at 161.

*Discussion*

A claimant is entitled to disability benefits under the Social Security program if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). The burden of proving disability is on the claimant. *E.g., Parker v. Harris,* 626 F.2d 225 (2d Cir.1980). However, once the claimant has established a *prima facie* case by showing that her impairment prevents her return to her prior employment, the burden shifts to the Secretary who must show that there exists alternative substantial gainful work in the economy which the claimant could perform, considering not only her physical capacity but also her age, education, experience and training. *Parker v. Harris, supra,* 626 F.2d at 231.

The regulations set forth a five-step sequence to be utilized in evaluating a disability benefit application. First, the trier of fact should consider the claimant's current work activity. If the claimant is currently engaged in substantial gainful activity, she will not be found to be disabled. Second, the trier of fact should determine whether the claimant has a "severe impairment" which significantly limits her capacity to perform basic work activities. Basic work activities are defined as including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. Third, the trier of fact should decide whether the claimant has an impairment as described in Appendix I of the regulations; if the condition qualifies under these guidelines, the individual must be determined to be disabled without consideration of vocational factors.

Fourth, the trier of fact should determine whether the claimant's impairments prevent her from performing her past work. Fifth, if the claimant cannot perform her past work, the trier of fact should consider whether the claimant's remaining physical and mental abilities are consistent with the demands of other jobs and whether she has the vocational capabilities to make the adjustment to such new type of employment. 20 C.F.R. § 404.1503; *see Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982). As noted above, the claimant bears the burden of proof as to the first four steps while the Secretary must prove the final one.

In reaching a conclusion on these issues, the case law indicates that the trier of fact should consider (1) objective medical facts, diagnoses, or medical opinions, (2) subjective testimony by the claimant as to pain or disability, and (3) background data such as the claimant's age, education, and previous work experience. *Parker, supra; Bastien v. Califano,* 572 F.2d 908 (2d Cir. 1978). In general, the expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence. *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *McLaughlin v. Secretary of H.E.W.,* 612 F.2d 701, 705 (2d Cir. 1980). Further, where, as here, the claimed disability results from severe pain, the application for benefits should be evaluated under "the standard that a medical impairment which results in severe disabling pain may give rise to a grant of disability even if 'objective' clinical findings do not provide proof of an affliction ordinarily causing such pain." *Aubeuf, supra,* 649 F.2d at 114, *quoting Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979). "Pain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings." *Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983).

The standard for judicial review of disability determinations by the Secretary is established by § 205(g) of the Act, 42

U.S.C. § 405(g). That section provides that the Secretary's factual findings shall be conclusive if supported by substantial evidence, which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). A reviewing court is not required to accept the Secretary's determination, however, if the Secretary has failed to apply proper legal principles or failed explicitly to consider evidence critical to a just determination of the claimant's application. *Parker, supra; Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975).

█ In this instance, the Secretary's determination is not supported by substantial evidence. As noted above, the expert opinions of a treating physician are normally binding upon the Secretary unless they are contradicted by substantial evidence. *See Aubeuf, supra.* Here, Garcia submitted extensive reports from Dr. Michelson, her treating physician, clearly indicating the disabling effect of her back injury. Dr. Michelson treated Garcia constantly for more than five years and performed both operations on her back. Prior to her second operation, he completed a residual functional capacity evaluation form to provide, in an objective format, an indication of the limits of claimant's physical abilities. Dr. Michelson's responses on this form demonstrate that, in his opinion, Garcia was severely restricted in her ability to perform life's most basic functions, such as walking, sitting and standing, and that she was almost completely unable to carry out simple body movements, such as bending, crawling or squatting, and easy tasks, such as lifting or carrying. Moreover, Dr. Michelson's reports for the period following Garcia's second operation in February 1982, which were considered by the Appeals Council, reflect that she was experiencing a difficult and slow recovery, and that, for an extended period of time, she required the services of a home attendant.

Nothing in the medical record contradicts this showing. The most recent reports of the two physicians from the State Insurance Fund, Drs. Kliger and Lehv, confirm that Garcia's range of movement was severely restricted and reflect her complaints of severe pain. Indeed, Dr. Lehv specifically concurred in the observations of and course of treatment ordered by Garcia's treating physician, Dr. Michelson. Both Drs. Kliger and Lehv found claimant to be suffering from a partial disability.

Even the report of Dr. Elpern, the Secretary's consulting doctor, is not inconsistent with Dr. Michelson's opinion. Following his examination of Garcia, Dr. Elpern observed in his dictated report that her range of motion was restricted and that she had diminished sensation along her left side. While the Secretary emphasizes, before me, that Dr. Elpern also concluded that Garcia's symptoms were caused by "a super imposed [sic] psychogenic factor," that one statement, standing alone in the entire medical record, does not provide an adequate basis for rejecting the medical opinion of her treating physician, reinforced by the reports of two other examining doctors. It is, in sum, not substantial evidence. Dr. Elpern did not opine that Garcia was not disabled. He never made a determination concerning the disabling effect of her pain, which he recognized, nor did he suggest to the ALJ how the limitations on Garcia's range of physical motion, which he also observed, should affect her ability to work. Dr. Elpern never completed a residual functional capacity evaluation form, as is normally done by the Secretary's doctor in this type of case. This evaluation would have given the ALJ an objective basis to compare the various doctors' views on the extent to which Garcia's pain and limited range of movement, which were noted by all examining doctors, rendered her unable to work. Absent some sort of definite opinion or objective statement to the contrary, the ALJ did not, in this case, have sufficient evidence to reject the treating physician's opinion concerning the disabling effect of Garcia's back injury.

Nor can the ALJ's own observations be used as a substitute for informed medical judgment. While the evaluation of credibility is almost always left to the trier of fact, here the ALJ rejected Garcia's complaints of severe pain by distorting the evidence and relying on other factors wholly extraneous to such a determination. In finding Garcia's presentation not credible, the ALJ stated:

This determination is based upon statements that the medication prescribed provides some relief, as well as the claimant's evident mobility. It is further buttressed by the undersigned's own observation that the claimant was meticulously coiffed and manicured at the time of the hearing. Neither did she appear to be in pain or distress, and was able to sit throughout the hour long proceeding.

Tr. at 20. To begin with, the thrust of the testimony in the record concerning the beneficial effects of Garcia's medication was not that it provided her with "some relief" but that it afforded her very little relief. See tr. at 59. Moreover, even assuming that her medication—Darvon at the time of the ALJ's hearing—alleviated some of her pain, it may be difficult for her to work while under the influence of that drug.

I am also at a loss to see any connection between Garcia's "meticulously coiffed and manicured" appearance and the ALJ's conclusion that her complaints of pain were not credible. Perhaps if there existed some evidence that Garcia had herself manicured her nails and set her hair, the ALJ might have had a basis for reasoning that because Garcia's pain doesn't prevent her from performing these exacting personal tasks, it is not sufficiently disabling; however, there was no such testimony. To the contrary, Garcia testified that she is unable to attend to her own personal needs and must be assisted by her husband. See tr. at 62. It would be illogical and unfair for a woman's pride in her appearance and her admirable sense of personal dignity to be considered as evidence against her on the narrow issue whether her medical condition renders her disabled.

Finally, the ALJ's observation that Garcia was able to withstand the hour-long hearing is not inconsistent with the evaluation of Dr. Michelson. His residual functional capacity evaluation, which was current at the time of the hearing, reflected his opinion that Garcia could sit, stand, or walk for up to an hour at any particular time. See tr. at 139. In addition, to the extent the ALJ was rejecting the existence of restrictions on Garcia's range of mobility, he was impermissibly intruding into an area reserved for expert medical evidence; here, all the doctors who examined claimant found her mobility to be limited. See Rivera, supra, 717 F.2d at 724 (although it is permissible for ALJ to evaluate credibility of complaints of pain, he must do so in light of all evidence regarding extent of pain; where there exists substantial evidence to rebut ALJ's medical conclusion, ALJ's observations at hearing are entitled to limited weight, and his principal, if not sole, reliance on them is improper).

My conclusion that there is no substantial evidence to support the Secretary's determination is reinforced by the evidence concerning Garcia's second operation, which took place while the ALJ's recommendation was awaiting review by the Appeals Council. Although the Appeals Council purported to consider these uncontradicted supplemental reports, it is hard for this Court to understand how, if the Council did review them, they did not mandate that the ALJ's decision be reversed or, at the very least, that Garcia's claim be remanded to the ALJ for reconsideration and the taking of additional evidence. Aside from the very obvious effect that the necessity for a second operation should have upon the credibility of Garcia's complaints of pain, the operation records and follow-up reports, standing alone, mandate a conclusion that Garcia is disabled under the Act.

When the medical evidence is viewed along with Garcia's testimony concerning the nature of her job in the handbag factory, it is clear that Garcia met her burden of demonstrating that she was unable to re-

turn to her prior employment. At the very least, it was demonstrated that a machine operator is occasionally required to carry piles of bags weighing up to 60 pounds, which Garcia is incapable of doing. *See* tr. at 53–54, 139. Accordingly, it was necessary for the Secretary to show that there exists substantial gainful work in the economy which Garcia could perform, considering not only her physical capacity, but also her age, education, experience and training. *See Parker, supra.* Because the Secretary introduced no evidence on this point, the Secretary's decision must be reversed and the matter remanded for further proceedings. Obviously, in reviewing Garcia's claim on remand, the Secretary should obtain whatever additional medical evidence that is necessary to update claimant's condition, including, but not limited to, consideration of the most recent supplemental reports of Dr. Michelson submitted, for the first time, to this Court. *See* 42 U.S.C. § 405(g). This action is accordingly dismissed, subject to reopening, should plaintiff seek to appeal the Secretary's decision on remand.

SO ORDERED.