**Modesta LAZARICH, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. C-83-4542 SW.**

United States District Court, N.D. California.

Aug. 20, 1984.

Lane Parker, Donaldson, Malcheski & Parker, San Francisco, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., John F. Barg, Chief, Civil Div., Kimberly A. Reiley, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER TO REMAND

SPENCER WILLIAMS, District Judge.

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking a review of a final decision of the Secretary of Health and Human Services. The Secretary determined that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act. Parties filed cross-motions for summary judgment. Plaintiff seeks, in the alternative, a remand for further proceedings.

Upon consideration of the record presented to the Court and a review of the relevant authorities, the Court denies the parties' motions for summary judgment, grants plaintiff's motion for remand, and orders the Secretary to present substantial evidence in support of the denial.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits on October 14, 1981, alleging that she became unable to work on December 24, 1980 as a result of several physical problems. The applications were denied initially and on reconsideration by the Social Security Administration. The

administrative law judge ("ALJ"), Gilbert Pavlovsky, before whom plaintiff, her attorney, and two witnesses appeared, considered the case *de novo* and, on April 28, 1983, found that plaintiff was not disabled. This determination became the final decision of the Secretary of Health and Human Services when it was adopted by the Appeals Council on September 12, 1983 after the consideration of additional evidence submitted by the plaintiff.

## II. BACKGROUND

Plaintiff, Modesta Lazarich, is a forty-two year old woman who was born in Nicaragua and has resided in the United States since 1962. She received an equivalent to a twelfth grade education in Nicaragua. Her past work experience includes two jobs. She worked for five years in a poultry factory which necessitated that she stand the entire day cutting chicken. From 1973 until 1980, plaintiff was employed as a keypunch operator for the Bank of America. This work consisted of constant movement of the fingers on her right hand and the holding of information cards in her left hand. Plaintiff testified that this job required her to carry boxes of cards to her machine. (Tr. 39) In addition, she was confined to her machine for two hour intervals without interruption or break. In December, 1980, plaintiff was forced to discontinue her employment because of increasingly severe shoulder, neck, lower back, and left knee pain and numbness.

Plaintiff testified that she constantly experiences sharp pain in the back of the neck which radiates to both shoulders. She has frequent muscle spasms in her right shoulder, arms and elbows whenever she is motionless for any length of time. Sitting in one position for more than an hour produces severe pain and numbness in her upper body. Consequently, she is forced to get up and walk or sit in a hot bath to alleviate the discomfort. Because she is not able to recline continuously, plaintiff must get up three or four times from her sleep, take pain medication, and simply move about. Unfortunately, prolonged walking of greater than two blocks creates severe pain and swelling, stiffness and numbness in both hands.

Plaintiff's daily activities are thus severely limited due to her disabilities. Dressing herself is difficult because she experiences sharp pain when she raises her hands over her head. Almost all of the housework is performed by her twelve year old daughter and other relatives. Plaintiff testified that she is unable to lift anything more than a coffee pot without pain or fear that it will be dropped. Plaintiff spends two hours a day in traction for her neck.

Plaintiff introduced medical records for the period between February, 1979 and December, 1982 at which time the hearing before the ALJ took place. The physicians who treated plaintiff have made objective findings which corroborate her complaints of severe pain. In a medical report as early as February 8, 1979, J.T. English, M.D. noted the presence of hypertrophic arthritic "bony spurs at the C6–7 level posteriorly with slight encroachment on the intervertebral foramina." (Tr. 102) Alfred Andreatta, D.C. stated in his January 5, 1981 report that plaintiff suffered from "acute pain of the cervico-dorsal spine musculature" and "paresthsia of left upper extremity" with hypersensitive points. His diagnosis of plaintiff at this time was "chronic cervico-dorsal myofascitis with radiculitis of left upper extremity." (Tr. 101)

Plaintiff's treating physician, Albert Iaccarino, M.D., observed that she had limited use of her shoulder and elbow in November, 1981. (Tr. 109) In April, 1982, Dr. Iaccarino noted that plaintiff had poor flexion of the shoulder, elbow and knee joints from tenderness. (Tr. 107) A CT scan taken on May 6, 1982 revealed degenerative changes "consistent with disc protrusion and/or herniation in the cervical spine at the C6–7 and C7–T1 intervertebral levels," with some alteration of the spinal canal due to "facet hypertrophy" at these levels. Within two weeks pain in the back of the neck and shoulders and in the right elbow and knee had increased to such a degree that Dr. Iaccarino hospitalized

plaintiff for ten days. She received cervical traction and physical therapy to alleviate the severe pain. Continued narrowing of the C5 and C6 disc space was observed. He advised plaintiff to get extensive rest and prescribed the cervical traction that she uses daily. In his residual functional capacity evaluation report of December, 1982, Dr. Iaccarino stated, based upon objective findings, that she was only able to sit for one hour per day and could not be employed where standing or walking to any degree was required. (Tr. 126)

An August 10, 1982 report of Brenda Spriggs, M.D. also objectively corroborates plaintiff's complaints of pain. She diagnosed a degenerative osteoarthritis of plaintiff's cervical spine which severely limited her movement. In addition, Dr. Spriggs observed limitation and swelling of her hands as well as pain in the right neck region and left knee.

Finally, psychological testing was administered on plaintiff in August, 1982 by Leonard Newman, Ph.D. As a vocational expert, Dr. Newman recognized that plaintiff had low average to borderline I.Q. compounded by a compulsive personality disorder. This disorder causes her to suffer from extreme tension, anxiety, and depression. Dr. Newman stated that the test data indicated an inability "to concentrate, to combine memory, perceptual, motor and organizational functions which would seriously hamper everyday living skills including those required in job performance." (Tr. 114) He felt that she had "marked impairment in occupational functioning." (Tr. 115)

In addition, a psychological pain evaluation of plaintiff was performed by Dr. Newman. The results, "which provide an objective measure of her actual pain experience," found plaintiff's pain level to be in the moderate to severe range and, surprisingly, higher than her subjective estimate. (Tr. 123) He noted that this high level of pain was achieved even after she had taken medication. He felt that such pain was a "significantly limiting factor as far as her capacity to perform work at any exertional level." (Tr. 123)

## III. APPLICABLE LAW

Despite these medical reports and plaintiff's testimony, the ALJ based on a report by an SSA doctor, concluded that plaintiff was not disabled within the meaning of the Act. The ALJ's report summarizes plaintiff's medical history, cites relevant statutes and regulations and concludes that plaintiff is not entitled to disability benefits. The Appeals Council and the Secretary affirmed this finding. The only question before this Court is whether there is "substantial evidence" on this whole record to support this determination.

It is clear that an administrative decision to deny social security benefits will be upheld on review if supported by "substantial evidence" and if determined that proper legal standards were applied. 42 U.S.C. § 405(g). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 842 (1971). The court's review is directed to the record as a whole and not merely to the evidence tending to support a finding. *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir.1978).

Where the proper legal standard, however, is not applied by the ALJ in weighing the evidence and reaching a decision, the decision should be set aside. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.1978).

In finding that the plaintiff had not met her initial burden of establishing a *prima facie* case of disability, the ALJ applied improper legal standards. First, in his written report the ALJ failed to give appropriate weight to the reports of plaintiff's treating physician, Dr. Iaccarino. It is well-settled that the ALJ must accord "substantial weight" to the diagnosis and medical evidence of plaintiff's treating physicians. *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980). The rationale is that the opinion of a treating physician "reflects

an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir.1971). Although not bound by the experts' opinions, the ALJ must provide "clear and convincing" reasons for rejecting them. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975).

Thus it is not sufficient for the ALJ to state simply that the claimant suffers several physical impairments yet is not precluded from "the performance of clerical tasks or key-punch operation, such as [she] has done before." (Tr. 20) *See Oppenheim v. Finch*, 495 F.2d 396 (4th Cir.1974). It must be shown medically that [the claimant] "can perform the physical activities those jobs require without serious aggravation to present physical impairment or to general health." *Id.*, at 398.

This Court feels that the ALJ reached his determination entirely on a one-time examination report by Louis Lesko, M.D. Based on this report in December, 1981, the ALJ concluded that the plaintiff was able to return to her former employment as a key-punch operator because she could work in a seated position, stand or walk in a six hour period, and lift and carry ten pounds, with no restriction on the use of her hands and feet. (Tr. 18) Dr. Iaccarino, on the other hand, stated in his December, 1982 report that plaintiff was incapable of performing a job which required her to stand or walk at any time or sit for more than one hour per day. (Tr. 126) Thus, even accepting Dr. Lesko's report, it does not properly reflect the progression of plaintiff's impairments within a year's time.

Furthermore, Dr. Lesko is an SSA consultative physician whose opinion was based on an apparently perfunctory physical examination. While such reports are, of course, relevant evidence, many courts have reviewed them with some suspicion. *See, e.g., Stewart v. Harris*, 509 F.Supp. 31, 35 (N.D.Cal.1980); *Smith v. Weinberger*, 356 F.Supp. 954 (C.D.Cal.1973). In a vigorous dissenting opinion in *Richardson v. Perales*, 402 U.S. 389, 411, 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971), Justice Douglas expressed strong misgivings about "circuit-riding doctors" who examine claimants only briefly or not at all, stating that the use of such doctors to defeat claims for disability benefits "should be beneath the dignity of a great nation." *Id.*, at 413, 91 S.Ct. at 1433.

Dr. Lesko's opinion following a cursory examination of the plaintiff is suspect as against that of Dr. Iaccarino, plaintiff's treating physician. The Ninth Circuit held in *Rhodes v. Schweiker*, 660 F.2d 722 (9th Cir.1981), that "where the examining doctor was in close contact with and had examined the plaintiff on several occasions, his opinion" is "entitled to more than passing consideration." *Id.*, at 724, citing *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977). Accordingly, this Court feels that the ALJ's decision to rely on a medical opinion based on a one-time examination, in preference to that of a physician with more than a year's familiarity with plaintiff's chronic condition, must be more fully explained.

Additionally, the ALJ erred in failing to consider the claimant's subjective evidence and in disregarding objective psychiatric findings which indicated the severity of plaintiff's pain. While the Secretary need not accept a claimant's subjective complaints of pain alone as establishing a disability entitling her to benefits under the Act, the courts have insisted that the Secretary "accord great weight to such subjective complaints—even when examining physicians have been unable to pinpoint specific organic causes—and that he fully articulate his reasons for rejecting claims based on subjective complaints." *Stewart v. Harris*, 509 F.Supp. 31, 33 (N.D.Cal.1980). The Ninth Circuit holds that subjective symptoms of pain are a significant factor to be weighed in determining whether a disability exists. *Mark v. Celebrezze*, 348 F.2d 289, 292 (9th Cir.1965).

The ALJ, in the case at bar, refused to give full weight to the plaintiff's testimony. He merely concluded that "claimant may experience some pain but that it is not so severe as to interfere with a full range of

sedentary work, such as the claimant has done before." (Tr. 20) The ALJ reached this conclusion without further explanation or support. It is not disputed that the ALJ, as the trier of fact, is free to consider the credibility of a claimant and take into consideration the truthfulness of allegations of subjective pain before rendering a determination. However, when the examiner's fact findings "turn on credibility choices concerning things as elusive as the truthfulness of subjective symptoms and complaints, the examiner's report should afford some indication of the choices made and the basis for them." *Goodwin v. Gardner*, 250 F.Supp. 454, 458 (N.D.Cal. 1966) (citation omitted).

Finally, a psychological pain evaluation performed by Dr. Newman, a licensed psychologist and vocational expert, indicated plaintiff's pain level to be in the moderate to severe range. The test results, "which provide an objective measure of her actual pain experience," were achieved after plaintiff had taken pain medication and were surprisingly higher than her subjective estimate. (Tr. 123) Dr. Newman noted that plaintiff suffered from depressive neurosis and compulsive personality disorder affecting her memory and ability to concentrate. He felt that her pain level was a "significantly limiting factor as far as her capacity to perform work at any exertional level [was] concerned." (Tr. 123) Dr. Newman estimated that psychotherapy would take "at least one year in order to have any significant effect upon her personal and vocational functioning." (Tr. 123)

However, the ALJ dismissed Dr. Newman's evaluation by stating that the evidence was "not supported by the other evidence of record" and does not reveal the severity of plaintiff's condition. (Tr. 20) While the courts have recognized that a psychiatric disability is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment, data consisting of diagnoses and observations of professionals trained in this field of medicine are accepted. *See, Lewis v. Weinberger*, 541 F.2d 417, 420 (4th Cir. 1976); *Taddeo v. Richardson*, 351 F.Supp. 177, 180 (C.D.Cal.1972).

Presented with a similar set of facts, we have previously ruled that such reports "should not be rejected simply because of the imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique." *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D.Cal. 1981). Furthermore, where the ALJ does reject any uncontradicted expert opinion, he must "expressly state clear and convincing reasons for his doing so." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). His failure to provide such reasoning is clearly in error.

Accordingly, plaintiff's motion to remand is granted and defendant's motion for summary judgment is denied. The case is hereby remanded to the Secretary of Health and Human Services in order that further findings may be made in accordance with this opinion.

IT IS SO ORDERED.